IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHARLES J DAVIS,

      Plaintiff,

v.                                      CASE NO. 5:15-cv-5-MW-GRJ

DARLA GRESKO, et al.,

      Defendants.

_____/

## REPORT & RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary Judgment, Doc. 20.  Plaintiff has filed a response in opposition, Doc. 29, and therefore the motion is ripe for review.  For the reasons discussed below, the undersigned recommends that Defendants' motion be granted.

### I. Plaintiff's Allegations

On December 18, 2014, Plaintiff initiated this action in the Circuit Court for the Fourteenth Judicial Circuit against Defendants pursuant to 28 U.S.C. § 1983 seeking compensatory and punitive damages for alleged constitutional and state-law abuses. Doc. 4.  Defendants—Bay County Jail ("Jail"),[1] Darla Gresko, Eddie Lawrence, Larry McDonald and Joseph Mastro—removed the case to this Court on January 8, 2015.

_____

[1]Bay County Jail is not a legal entity subject to suit; therefore, its Motion to Dismiss, Doc. 5, was granted and Bay County Jail was dismissed as a party.  Doc. 13; Doc. 19.

Doc. 1.

Plaintiff alleges that on September 28, 2011, while housed in the Jail's detention center, he was physically assaulted by four jail employees.  The incident came about because Plaintiff refused to dress himself in his jail uniform before a scheduled court appearance.[2]  Plaintiff alleges Defendant Gresko, Brannon, Lawrence, McDonald, and Mastro handcuffed him, physically forced the uniform on to him, and then "dragged him from his cell by his arms," causing injuries.  Doc. 4.

Plaintiff alleges that Defendant Gresko ordered the use of force in retaliation against him because of an alleged incident[3] that occurred during a previous confinement at the Jail.  He states that the September 28, 2011 incident exacerbated his pre-existing injuries.  Plaintiff states that before the accident, he "had several pre-existing injuries to his neck, (disc), lower back, pinched nerve and ruptured disc . . . [and he] couldn't stand for long periods of time."  Plaintiff alleges that Defendants knew or should have known about his pre-existing injuries, as they were allegedly listed on his housing log "to inform staff of his needs."  Doc. 4.

Plaintiff alleges that due to the incident, he suffered injuries to his back, neck, wrists, thumb and forearms.  Plaintiff states that he had to be transported to a holding

---

[2] In his Response to Defendants' summary judgment motion, Plaintiff asserts that he refused to get dressed because Defendant "Gresko and her staff refused to allow him to shave before trial."  Doc. 29 at 4.

[3] Plaintiff claims that Defendant Gresko "lost" in a 2006 jury trial to Plaintiff, which motivated Defendant Gresko's retaliatory conduct.  While the record is unclear as to the details of this previous case, Plaintiff describes the case as a criminal charge of "lewd and lascivious acts" against him, which he was acquitted of in a 2006 trial.  Doc. 4.

cell in a wheel chair, as he was unable to walk.  Plaintiff alleges he called for medical attention from his holding cell and was ignored.  Doc. 4.

Plaintiff alleges that Defendants: (1) violated his Fourteenth Amendment due process rights; (2) were deliberately indifferent to his serious medical needs; (3) used excessive force; (4) subjected him to cruel and unusual punishment; (5) caused him mental and emotional distress; and (6) violated Florida Constitutional Law and state regulatory law.  He seeks compensatory damages in the amount of $10,000,000 per Defendant and punitive damages in the amount of $50,000,000 per Defendant.  Doc. 4.

## II. Defendants' Summary Judgment Evidence

In an affidavit dated April 29, 2015, Defendant Gresko described the September 28, 2011 incident.  Defendants Brannon, McDonald, Lawrence, and Mastro also submitted affidavits describing their role in restraining, dressing and transporting Plaintiff.  Doc. 20-2; Doc. 20-3; Doc. 20-4; Doc. 20-5.  All Defendants submitted Use of Force Reports to the Bay County Jail recounting the same facts outlined in their affidavits.  Doc. 20-6 at 6-17.  The Chief of Security and Warden of Bay County Jail each submitted signed statements approving the force used.  Doc. 20-6 at 9.  The use of force was authorized in advance of the incident by Administrative Supervisor David Slusser; also, Nurse T. Price was contacted before Defendants began dressing Plaintiff.  Doc. 20-6 at 10.

Defendants have also submitted records of Plaintiff's disciplinary report, in which Plaintiff was found guilty of violating commands and disturbing the operation of the Jail, and penalized with thirty days confinement.  Doc. 20-6 at 25.

Defendants also attached Plaintiff's medical records from the period following the September 28, 2011 incident.  Plaintiff submitted a "Sick Call Request" form on September 29, 2011, complaining of arm, back, neck, and ear pain.  Plaintiff was examined multiple times for his complaints over the subsequent days and, on October 4, 2011, received X-Rays to his right hand and wrist, as well as to his lumbar and cervical spine.  None of the X-Rays revealed evidence of fractures or dislocations.  Multilevel degenerative disc changes were noted from Plaintiff's cervical spine X-Ray.  Doc. 20-8.

Defendants also attach a sworn document from Warden Frank Owens stating that Plaintiff failed to exhaust his administrative remedies at the jail.  The grievances Plaintiff did submit are attached as well.  Doc. 20-1.

### III. Plaintiff's Summary Judgment Evidence

Plaintiff submits pictures of his wrists and arms allegedly taken after the use of force as exhibits.  Doc. 29-1 at 1-2.  Plaintiff also attached an excerpt of the September 28, 2011 state court transcript, in which Plaintiff's attorney asks the court to order the jail provide him medical treatment.  Doc. 29-1 at 3.

Plaintiff also submits the documents from his disciplinary report.  Doc. 29-1 at 6-8.  Plaintiff presents documents related to medical treatment he allegedly received at the jail, but contends that some of these documents were falsified and did not accurately reflect his injuries or the treatment he received.  Doc. 29-1 at 9-23.

Plaintiff has also submitted Defendant Gresko's answers to interrogatories, with annotations from Plaintiff alleging "false statement" multiple times and commenting on

answers Plaintiff disagreed with.  Doc. 29-1 at 24-27.  Plaintiff attaches the other

Defendants' answers to interrogatories as well, again with hand-written annotations

stating "lie" and inserting commentary next to multiple answers.  Doc. 29-1 at 28-49.

Plaintiff also submits Defendants' affidavits regarding the September 28, 2011 incident

with more annotations by Plaintiff.  Doc. 29-1 at 59-74.

Plaintiff attached documents outlining the jail's grievance process as well as four

"Inmate Request Forms" alleging excessive force, submitted to the warden between

September 30, 2011 and October 6, 2011.  Doc. 29-1 at 50-58.

Plaintiff also submitted the Use of Force Report documents with more hand-

written annotations.  Doc. 29-1 at 75-79.  Plaintiff attached a copy of his original

complaint and affidavit.  Doc. 29-1 at 80-89.  Finally, Plaintiff submits an affidavit in

opposition to Defendants' motion for summary judgment.  Doc. 30.

## IV.  Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary

judgment is appropriate only when the Court is satisfied that "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  In applying this standard, the Court must examine the pleadings, depositions,

answers to interrogatories, and admissions on file, together with any affidavits and other

evidence in the record "in the light most favorable to the nonmoving party."  *Samples on*

*Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).  As the Supreme

Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the

initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is

successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." *Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## V. Discussion

### A. Exhaustion

Defendants first move for summary judgment because they allege Plaintiff has failed to exhaust. Under the Prison Litigation Reform Act (PLRA), inmates must exhaust all available administrative remedies before proceeding in federal court. 42 U.S.C. § 1997e ("[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as available are exhausted."). The exhaustion provision is a mandatory precondition to bringing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 211 (2002).

For the exhaustion requirement to be met under the PLRA, the prisoner must properly exhaust all available remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). To properly exhaust all remedies, the prisoner must "take each step within the administrative process." *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

When a defendant raises the issue of failure to exhaust in the context of an inmate's 42 U.S.C. § 1983 action, it is treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008). The court uses a two part procedure to determine whether a plaintiff has failed to exhaust his remedies. First, the court must review the defendants' factual allegations along with those contained in the plaintiff's response, construing conflicting facts in the light most favorable to the plaintiff. If, after reviewing these facts, the defendant is entitled to have the complaint dismissed, it will be dismissed. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). However, if the complaint is not subject to dismissal, the court must make findings of fact necessary to resolve the exhaustion issue. *Id.*

Because exhaustion is treated as a matter in abatement and "does not deal with the merits," Defendants are not entitled to dismissal with prejudice solely on the grounds of exhaustion. *Bryant*, 530 F.3d at 1374-75. Accordingly, this Court will review exhaustion as a matter in abatement. *Id.* ("[Exhaustion] should be raised in a motion to

dismiss, or be treated as such if raised in a motion for summary judgment.").

The Jail's administrative process is outlined in the Inmate Handbook and the Warden's sworn statement.  Doc. 20-1 at 1-7.  The grievance process consists of a "simple progression from an Inmate Request Form, to an Informal Resolution and then to a Formal Grievance."  Doc. 20-1 at 1.  The Inmate Request Form is not mandatory, however the other two forms are.  Doc. 20-1 at 1.  Prisoners must file the Informal Resolution within seven days of the grieved incident.[4]  Doc. 20-1 at 1, 5.  Next, Prisoners must file a Formal Grievance within seven days of the Informal Resolution response.  Doc. 20-1 at 1.  The inmate then has five days to appeal the Formal Grievance response to the Warden.  Doc. 20-1.

Plaintiff's grievance history, as established by the sworn statements of the Warden and attached exhibits, consists of four Inmate Request Forms concerning the incident submitted between September 30, 2011 and October 6, 2011.  Doc. 20-1 at 8-11.  There is no record of any Informal Resolutions or Formal Grievances submitted by Plaintiff concerning the September 28, 2011 incident, which are necessary to exhaust. Doc. 20; Doc. 29.

Plaintiff states that the case should not be dismissed on exhaustion grounds for two reasons: (1) the grievance process was inadequate because the Jail would only address one issue at a time; and (2) he alleges that he submitted an informal grievance on October 10, 2011, which was never responded to.

---

[4] Warden Frank Owens states that Informal Resolution forms will generally be accepted up to ten days after an incident, despite the stated seven day limitation.

Plaintiff's first argument is undercut by the fact that he submitted two inmate request forms, and thus grieved two issues simultaneously, on September 30, 2011. The other two inmate request forms were submitted on October 5 and 6, 2011, respectively.  Therefore, to the extent that Plaintiff alleges the grievance process was inadequate because he was only able to raise one issue per grievance, this claim is without merit.

With respect to Plaintiff's claim that he submitted an informal grievance on October 10, 2011, said grievance is absent from the record, and Warden Frank Owens has submitted a sworn statement asserting that no such grievance had been filed.  Doc. 20-1; Doc. 29.  Even if there was evidence that Plaintiff had submitted an informal grievance, Plaintiff does not allege that he filed any formal grievances which would be necessary to satisfy the exhaustion requirements.  Doc. 20; Doc. 29.  Conclusory allegations without supporting evidence in the record are insufficient to overcome summary judgment.

Plaintiff failed to exhaust his administrative remedies, and therefore his complaint is subject to dismissal without prejudice.  *See Bryant*, 530 F.3d at 1374-75. However, because the Court has determined that Defendants are entitled to summary judgment on the merits of the case, the Court recommends dismissal with prejudice on these grounds.

## B. Plaintiff's Excessive Force Claim

Plaintiff claims that Defendants' actions constituted excessive force and cruel and unusual punishment during the September 28, 2011 incident, causing him injury.

"Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eight Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."  *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). Although a pretrial detainee's mistreatment claims proceed through a different Constitutional Amendment, "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."  *Id.*  Pretrial detainees cannot state a claim for cruel and unusual punishment, since "pretrial detainees (unlike convicted prisoners) cannot be punished at all . . . ."  *Kingsley v. Hendrickson*, __ U.S. __, 2015 WL 2473447, at *8 (2015).

To establish excessive force in violation of the Fourteenth Amendment, the Court must apply an objective standard.  *Id.* at *5 (holding that a plaintiff need not establish defendant's state of mind with regard to whether the force was excessive).  A pretrial detainee may prevail on an excessive force claim "by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Id.* at *6.

Objective reasonableness must be resolved on a case-by-case basis weighing a multitude of factors.  *Id.*  Courts must account for prison administrators' legitimate interest in maintaining order, discipline and security, and defer judgment of policies and practices to jail officials tasked with operating such institutions.  *Id.* at *5.

In excessive force cases, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the

very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986.)  A

variety of factors are considered in determining whether the force was applied

maliciously or sadistically, including the extent of injury, the need for force, the

relationship between that need and the amount of force used, the threat reasonably

perceived by the prison officials applying it, and any efforts made to temper the severity

of the force used.  *Hudson v. McMillian,* 503 U.S. 1, 7 (1992).

After independently reviewing all of the summary judgment evidence, including

the video of the incident and Defendants' affidavits describing the incident, there is no

triable issue concerning what occurred. On the morning of September 28, 2011,

Defendant Gresko assembled a team of jail officials outside Plaintiff's cell to dress him

after he refused orders to get dressed in his jail uniform for a court appearance.  Doc.

20-6; Doc. 20-7.

Defendant Brannon led the group of officials into Plaintiff's cell, and ordered

Plaintiff to dress himself one final time.  After Plaintiff refused, Defendants Brannon,

Davis and Mastro used their hands to roll Plaintiff—who was laying in his bed—on to his

stomach and handcuffed him.  Defendants then gave Plaintiff orders to stand up which

were refused.  The video then shows Defendants pick up Plaintiff and place him on the

ground.  Defendants then proceeded to put on Plaintiff's jail uniform pants, despite

obvious efforts by Plaintiff to prevent the pants from being applied by crossing his legs.

Defendants next un-handcuffed Plaintiff and forcibly put the shirt on to him and then

handcuffed him again, overcoming apparent resistance.  The video then shows

Defendants place Plaintiff in a wheelchair and transport him to a holding cell.  In the

holding cell, Plaintiff was moved from the wheelchair to a bench, and then shackled.
Doc. 20-6; Doc. 20-7.

Plaintiff has failed to state a credible claim that the Defendants' use of force was applied maliciously, sadistically or was excessive.  *See Whitley*, 475 U.S. at 320-21. The record establishes that Plaintiff refused orders to get dressed for court the morning of September 28, 2011 despite multiple opportunities to comply.  The video recording of the incident shows that Plaintiff refused to walk and therefore had to be physically moved from the floor to a wheelchair for transport.  This Court finds that the force used was applied in a "good-faith effort to maintain or restore discipline," and did not violate Plaintiff's due process rights.  The government had a legitimate interest in maintaining order and dressing Plaintiff for his court appearance despite his protests.  *See Herrera v. Mowry*, Case No. 8:12CV321, 2014 WL 4101611, at *8 (D. Neb. Aug. 18, 2014) (finding excessive force absent where jail officials physically restrained and transported a prisoner who refused to get dressed for a prison transfer).

Applying the factors weighed by the Supreme Court in *Hudson* yields the same result.  The medical records from immediately after the incident do not reveal extensive injuries, despite Plaintiff's conclusory contrary assertions.  The diagnoses from Plaintiff's initial medical examination consisted of merely a left wrist indentation, back pain, and toe numbness.  Plaintiff was again examined at approximately 5:15 PM on September 28, 2011; the examiner found "no obvious injuries" present, although Plaintiff complained of pain in his fingers, jaw, hip, and back.  As was previously noted, X-Rays taken of Plaintiff days after the incident only showed degenerative abnormalities.  Doc.

20-8.

Further, Plaintiff's refusal to get dressed for his court appearance clearly created a need to use force.  The amount of force used was appropriate given the circumstances, and efforts were made by Jail staff to temper the severity of the force used, such as restraining Plaintiff while dressing him and transferring him in a wheel chair after he refused to walk.

The evidence supplied by Plaintiff does not create an issue of triable fact necessary to overcome summary judgment.  Plaintiff's allegations of being slammed onto the ground and dragged by his wrists are directly refuted by the video of the incident.  *See* Doc. 29 at 1; Doc. 20-7.  The Court also notes that the pictures supplied by Plaintiff to substantiate his alleged injuries are too grainy to reveal any useful information about his injuries.  Doc. 29-1 at 1-2.  Nonetheless, the quality of the pictures does not make any difference because Plaintiff's description of his "wrist injuries" is consistent with the medical records from his post use of force examination immediately following the incident, which noted "wrist indentations" but nothing more serious. Doc. 4; Doc. 20-7.  Additionally, Plaintiff's allegations that Defendants falsified documents or that their testimony was otherwise dishonest lacks evidentiary support in the record. Doc. 29.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's excessive force claims.

### C. Plaintiff's Deliberate Indifference Claim

Plaintiff alleges that Defendants acted with deliberate indifference to a known

serious medical need.  The core of Plaintiff's deliberate indifference claim is that: (1) Defendants knew or should have known of his pre-existing injuries, and as a result they should not have used force because of the enhanced risk of injury to Plaintiff; and (2) that he was not treated for his injuries until 6:30 AM on September 28, 2011 when the incident occurred at approximately 4:10 AM, which caused undue delay in his treatment. Doc. 29 at 3.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment.  Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause, rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause.  *Andujar v. Rodriguez*, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007).  However, pretrial detainees are afforded the same protection as prisoners, and cases analyzing deliberate indifference claims of pretrial detainees and prisoners can be used interchangeably.  *Id.*

"To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).  To establish the second element—deliberate indifference to the serious medical need—the plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351

(11th Cir. 2004); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (explaining that

the plaintiff must show that the defendant was "aware of facts from which the inference

could be drawn that a substantial risk of serious harm exist[ed], and he must also [have]

draw[n] the inference").

"Delay in access to medical attention can violate the Eighth Amendment . . . when

it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth

Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (citation and internal quotation marks

omitted), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

Deliberate indifference in the form of an unreasonable delay is cognizable when prison

officials delay treatment for life-threatening emergencies, but also in "situations where it

is apparent that delay would detrimentally exacerbate the medical problem." *Id.*

Ultimately, however, "[a]n inmate who complains that delay in medical treatment rose to

a constitutional violation must place verifying medical evidence in the record to establish

the detrimental effect of delay in medical treatment to succeed." *Id.*

Defendants are entitled to summary judgment on Plaintiff's deliberate indifference

claims.  Jail medical records disclose that Plaintiff was examined immediately after the

September 28, 2011 incident at 4:20 AM.  Doc. 20-6 at 17.  Plaintiff's immediate receipt

of treatment after the incident evidences that there is no factual support for Plaintiff's

claim that the medical treatment he received was untimely.

While Plaintiff contests the accuracy of several medical records, and alleges that

he was not examined until 6:30 AM after the September 28, 2011 incident,  Plaintiff has

failed to include evidence in his response to substantiate his allegations of

misstatements on the part of Defendants.  Instead, Plaintiff seeks to discredit Defendants' sworn statements with conclusory allegations such as "she's lying!"  Doc. 29-1 at 26.

However, even assuming that this claim is true, it does not amount to deliberate indifference to a serious medical need.  There are no facts in the record that disclose that a two hour delay in medical treatment for minor ailments such as bruises and back aches Plaintiff suffered would have been life-threatening, or would have "exacerbate[d] the medical problem."  *See Hill*, 40 F.3d at 1187.  Plaintiff also failed to include medical evidence in the record showing a detrimental effect caused by the alleged delay.  *See id.*  Thus, Defendants are entitled to summary judgment on Plaintiff's claim stemming from the alleged delay in immediate treatment.

Further, Plaintiff has wholly failed to prove the requisite elements for a claim of deliberate indifference to a serious medical need.  Even assuming that Plaintiff had a serious medical need, there is no evidence that Defendants subjectively disregarded a risk of further harm or that their harmful conduct exceeded mere negligence.  *See Mann*, 588 F.3d at 1306-07.

In addition to receiving medical care immediately following the incident, Plaintiff continued to receive medical treatment frequently at the Jail until early October, 2011.  Doc. 20-1; Doc. 29-1 at 50-58.  He received X-Rays after his complaints persisted, but they failed to reveal significant injury.  Doc. 20-1.  Plaintiff's immediate and ongoing medical treatment following the use of force in question establishes the nonexistence of a triable issue of fact regarding Plaintiff's deliberate indifference claim.  *See* Fed. R. Civ. P. 56(c).

Plaintiff's allegations that Defendants knew of his pre-existing injuries, even if true, do not entitle him to relief.  As a preliminary matter, Defendant Gresko testified under oath to being unaware of Plaintiff's medical history.[5]  Doc. 29-1 at 26.  Further, Plaintiff does not assert that he disclosed his pre-existing injuries to officers—only that they should have reviewed his medical history before authorizing force to be used on him.  Nurse T. Price was contacted and Administrative Supervisor David Slusser authorized the use of force before the fact. Therefore any claim that Defendants' use of force constituted deliberate indifference because Defendants lacked authorization to use force are without merit.  Doc. 20-6 at 10.

Accordingly, Defendants did not disregard a serious risk of harm or act with deliberate indifference to a serious medical need, and are thus entitled to summary judgment on Plaintiff's deliberate indifference claims.

## D. Retaliation

Plaintiff alleges that the use of force was in retaliation for a previous encounter between Defendant Gresko and Plaintiff at the Jail.  Plaintiff asserts that the previous encounter consisted of Defendant Gresko falsifying several documents and disciplinary reports against him alleging "lewd and lascivious acts in the presen[ce] of correctional staff."  He states that Defendant Gresko "gave him an outside charge" for the acts, but lost to him in a June 2006 trial.  Plaintiff alleges that Defendant Gresko repeatedly threatened and harassed him after before the September 28, 2011 incident, and that the

---

[5] In her answers to interrogatories, Defendant Gresko states: "Correctional officers are not permitted to know medical information relating to inmates."  Doc. 29-1 at 26.

use of force in question was motivated by retaliation.  Doc. 4 at 4.

To establish an actionable First Amendment retaliation claim, "the inmate must establish three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley,* 532 F.3d 1270, 1276 (11th Cir. 2008).  The Eleventh Circuit has held that a plaintiff suffers adverse action if the defendant's alleged retaliatory conduct would likely deter a person of ordinary firmness from exercising his First Amendment rights.  The plaintiff does not have to show that his own exercise of First Amendment rights have been chilled.  *Bennett,* 423 F.3d at 1254.

In this case, Plaintiff has failed to establish that Defendant Gresko's orders were calculated to deter constitutionally protected speech.  Even assuming Plaintiff's allegations satisfy the first two elements necessary for a retaliation claim—constitutionally protected speech and the chilling effect of a defendant's conduct—Plaintiff has failed to establish the causal relationship between the use of force and the protected speech.  *See Smith v. Mosley*, 532 F.3d at 1276.

The record evidence instead shows that the force was employed solely in response to Plaintiff's refusal of orders to get dressed in his jail uniform.  *See* Doc. 20. Plaintiff has failed to submit evidence in support of his retaliation allegations, and no reasonable jurist could find that the use of force was motivated by retaliation.  *See Beard,* 548 U.S. at 530.

In sum, the Court concludes that the evidence established, without dispute, that Defendants use of force was in response to Plaintiff's refusal to comply with orders to get dressed.  Because Plaintiff's allegations do not create an issue of triable fact, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

### E. Qualified Immunity

Even if the Court were to find that Defendants had violated one of Plaintiff's constitutional rights, Defendants assert they are entitled to qualified immunity from damages.

Defendants argue that they are' entitled to summary judgment on Plaintiff's Fourth Amendment claim because he is protected by qualified immunity.  "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Andujar v. Rodriguez,* 486 F.3d 1199,1202 (11th Cir. 2007) (citations omitted); *Brandon v. Holt,* 469 U.S. 464, 472-73 (1985).  Further, qualified immunity is only available in suits for damages.  *See, e.g., Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2080 ("Qualified immunity shields federal and state officials from money damages"); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An official wishing to invoke the affirmative defense of qualified immunity must have been acting within his discretionary authority.  *Skop v. Atlanta,* 485 F.3d 1130, 1136 (11th Cir. 2007).  If a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not proper.  *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002).

There are two prongs to a qualified immunity test. The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir. 2004).  The Supreme Court has held that lower courts are permitted to exercise discretion in deciding which prong of the test to address first.  *Pearson v. Callahan,* 555 U.S. 223 (2009).

As a threshold matter, it is undisputed that Defendants were acting within their discretionary authority.  However, in light of the foregoing discussion, Plaintiff has failed to establish that Defendants violated a clearly established constitutional right because they did not use excessive force or deny him medical care or retaliate against him.  Accordingly, Defendants are entitled to qualified immunity from damages.

### F. Plaintiff's State Law Claims

Plaintiff alleges Defendants violated "Florida State Constitutional Laws, County Jail Rules and Regulations and the Florida Model Jail Standards."  This bare assertion fails to specify any state constitutional or regulatory provisions that have been violated.  These claims are merely conclusory allegations based on subjective beliefs.  Therefore, Defendants are entitled to summary judgment on these claims.

### G. Punitive Damages

In his complaint and response in opposition to summary judgment, Plaintiff seeks to recover punitive damages.  A plaintiff must show "reckless or callous disregard for the plaintiff's rights" to support an award of punitive damages.  *Smith v. Wade*, 461 U.S. 30, 51 (1983); *Fields v. Corizon Health, Inc.*, 490 F. App'x 174, 186 (11th Cir. 2012).  Here,

the record does not support the assertion that Defendants acted with reckless or callous disregard for Plaintiff's rights and therefore punitive damages would be inappropriate.

## VI.  Recommendation

Based on the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, Doc. 20, should be **GRANTED**, all pending motions terminated, and the case closed..

**IN CHAMBERS**, at Gainesville, Florida, this 20th  day of July, 2015.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**